Michael D. WESSINGER and Dennis Lee Morrison, Appellants,

v.

FIRE INSURANCE EXCHANGE, Appellee.

No. 05–95–01623–CV.

Court of Appeals of Texas, Dallas.

July 18, 1997.

Timothy M. Fults, Fults, Francis & Goodman, Dallas, for appellants.

Stephen D. McKimmey, Johnson & Sylvan, P.C., Dallas, for appellee.

Before LAGARDE, HANKINSON and BRIDGES, JJ.

## OPINION

HANKINSON, Justice.

Michael D. Wessinger got drunk and inexplicably punched Dennis Lee Morrison in the face several times, causing permanent vision loss. Wessinger does not deny that he attacked Morrison, but claims his intoxication influenced his decision to punch Morrison; he does not remember punching Morrison; and he never intended to injure Morrison. In this insurance coverage case we must decide whether Wessinger's drunken decision to punch Morrison constitutes an accident, so that it falls within the definition of an occurrence covered by Wessinger's homeowner's insurance policy. Because we conclude that voluntary intoxication does not destroy the volitional and intentional nature of Wessinger's conduct and that Morrison's injuries naturally resulted from that conduct, Wessinger's act was not accidental and thus not a covered occurrence. We therefore affirm the trial court's summary judgment that the policy does not cover this incident.

### BACKGROUND

Morrison initially sued Wessinger in a Dallas County district court, alleging that Wessinger negligently caused him injury when, in a drunken fit, Wessinger punched Morrison repeatedly in the head. A jury found Wessinger liable and awarded Morrison $127,187 in damages. The district court signed a judgment on the verdict.

Fire Insurance Exchange, Wessinger's homeowner's insurance company, then filed this declaratory judgment action challenging coverage for the incident made the basis of Morrison's original lawsuit. Wessinger and Morrison answered and counterclaimed, asserting that, by denying coverage, Fire Insurance breached its insurance contract and violated the Texas Deceptive Trade Practices Act and the Texas Insurance Code.

After answering Wessinger and Morrison's counterclaim and conducting discovery, Fire Insurance moved for summary judgment arguing that Wessinger's homeowner's policy did not cover Wessinger's conduct for two reasons. First, Wessinger's actions were not accidental and thus not a covered occurrence under its policy. Second, Morrison's damages were the result of Wessinger's intentional conduct and thus a policy exclusion prevented coverage. Fire Insurance also moved for summary judgment on Wessinger and Morrison's extracontractual claims.

Fire Insurance's summary judgment evidence consists mainly of trial testimony from Morrison's original lawsuit. That testimony establishes that Wessinger spent the afternoon and evening of December 14, 1991, in a Taipei, Taiwan bar drinking beer. Wessinger testified he drank six or seven beers before he ate dinner and an equal number after dinner. He admitted that by evening's end he was drunk. He does not remember much about that evening and what little he does remember comes back in "flashes." Many portions of the evening he does not recall at all.

While at the bar that evening, Wessinger ran into Morrison and Morrison's girlfriend, Jackie. As compatriots abroad, Wessinger and Morrison had become friendly and socialized together. Later that evening, Morrison and Jackie invited Wessinger to attend a party with them. Morrison, Jackie, and Wessinger then took a cab to their destination. Once there, they got out of the taxicab and began walking in search of the party's exact location.

At trial, Wessinger testified that Morrison and Jackie had been arguing since they left the bar because a stranger gave Jackie flowers. According to Wessinger, Morrison was jealous and verbally chastised Jackie. Jackie looked to Wessinger for support and a "shoulder to cry on." So when Morrison later became angry at Jackie for going down the wrong street looking for the party, snapped his fingers, and ordered Jackie back into the taxicab, Wessinger decided to protect Jackie. Although at trial he could not recall the exact words spoken, he testified that he exchanged angry words with Morrison and then punched Morrison. Although Wessinger does not remember exactly what happened at that point in the evening, he does not dispute that he hit Morrison. At

trial, he admitted that he "[struck] a hard blow and hit [Morrison] in the face." Further, in answers to interrogatories, Wessinger also admitted that on December 14, he hit or struck Morrison, causing bodily injury.

Morrison and Jackie testified at trial to different versions of these events. Morrison agreed he became jealous when another man gave Jackie flowers and that, during their taxicab ride, he cautioned her about accepting flowers from strangers. But Morrison claimed that he and Jackie did not fight. Jackie testified she received flowers from a stranger that evening, but did not recall Morrison fighting with her or lecturing her that evening. Morrison and Jackie both agree that while they were standing on the sidewalk, Wessinger attacked Morrison, hitting him in the head several times and knocking him to the ground. Morrison testified at trial that Wessinger hit him several times in the face. Wessinger's attack caused Morrison's left retina to detach, leaving permanent injury to his left eye.

Wessinger and Morrison filed a summary judgment response in which they responded to each argument Fire Insurance raised. Wessinger and Morrison each executed an affidavit and filed it, along with deposition testimony, to support their counterarguments. Although in his affidavit Wessinger claimed not to remember the events or his actions that evening, neither he nor Morrison contradicted the version of events presented at trial in Wessinger's original lawsuit. Wessinger, in fact, stated, "I am aware Dennis Morrison says that I hit him and knocked him down, and I do not dispute that." Instead of addressing the events that took place that night, both Wessinger's and Morrison's affidavits address only Wessinger's subjective intentions that evening.

As noted already, Wessinger denied a "specific recollection" of the events and his actions on December 14, 1991, because he had been drinking heavily that day. He claimed, however, that he "never intended to hurt or injure Dennis Morrison, and ... certainly never intended to cause the significant injuries to his eye, and his effective blindness in his left eye, which resulted from these events." He also asserted that he "did not intend to hit Dennis Morrison at all." Instead, he maintained that "it appears that I acted quickly and impulsively, probably as a result of having too much to drink."

Morrison, too, testified about his subjective impression of Wessinger's inculpable conduct:

On December 14, 1991, I knew that Michael Wessinger had been drinking, and it was obvious that his drinking was having an effect on him, but I had no reason to believe that he would cause me any harm. In fact, immediately prior to the incident involved in this litigation, Michael Wessinger had appeared friendly and even affectionate toward me. Likewise, immediately after the incident made the basis of this litigation, Michael Wessinger again appeared friendly and as if nothing had happened. In between, it was as if something had snapped, and he was acting entirely out of character. At no time did I notice him having any intent to cause any injury to me; and, I never had any indication he intended to hit me at all. He gave no indication that he was upset or angry; he did not threaten me in any way; I did not provoke him or aggravate him in any way; and, the entire incident came without warning and was entirely unanticipated. Michael Wessinger apologized to me after and told me he never intended to hurt me, that he did not know why he acted as he did, and that he did not remember most of what happened.

After reviewing this summary judgment evidence, the trial court granted Fire Insurance's motion for summary judgment in its entirety. Without specifying its reasons, the trial court declared that Wessinger's homeowner's policy did not cover the events that occurred on December 14, 1991. The trial court also decided that Wessinger and Morrison should take nothing on their breach of contract, DTPA, and insurance code counterclaims. This appeal followed.

## DISCUSSION

We review the trial court's judgment de novo to determine whether Fire Insurance established its right to prevail as a matter of

law.[1] Although Wessinger and Morrison do not challenge on appeal the trial court's summary judgment on their DTPA and insurance code counterclaims, in three points of error they do contend the trial court erred when it determined coverage does not exist. In their first point of error, Wessinger and Morrison argue that Fire Insurance failed to prove conclusively that Wessinger's conduct came within the policy's exclusion for intentional injury. In their third point of error, Wessinger and Morrison claim the intentional injury exclusion is ambiguous and, when construed against Fire Insurance (the policy's author), a fact issue exists as to whether Wessinger's acts fell within the exclusion. And, in their second point of error, which is the focus of our review, Wessinger and Morrison contend that Fire Insurance failed to prove conclusively that Wessinger's conduct was not a covered occurrence as defined in the policy.

According to Wessinger's homeowner's policy, coverage exists only for "bodily injury" or "property damage" caused by an "occurrence." An "occurrence" under the policy is defined as an "accident." But the policy does not define the term "accident."

■ Courts determine whether certain conduct constitutes an "accident" for purposes of insurance coverage on a case-by-case basis. In *Argonaut Southwest Insurance Co. v. Maupin*, the Texas Supreme Court adopted the general rule that "[w]here acts are voluntary and intentional and the injury is the natural result of the act, the result was not caused by accident even though that result may have been unexpected, unforeseen, and unintended."[2] Thus, to decide whether an act or event satisfies *Argonaut*'s "accident" definition, we perform a two-step analysis.

First, we determine the specific "acts" alleged to be the cause of the plaintiff's damages and then whether the acts were "voluntary and intentional." If we determine that the acts that produced the alleged injuries were committed involuntarily and unintentionally, our inquiry stops there because the results of the acts would be accidental. But if we determine the acts were committed voluntarily and intentionally, we must then decide under the *Argonaut* definition whether the injuries were a "natural result" of the acts.

■ When a result is not the natural and probable consequence of an act or course of action, it is produced by accidental means.[3] The natural result of an act is the result that ordinarily follows, may be reasonably anticipated, and ought to be expected.[4] This standard is objective. A person is held to intend the natural and probable results of his acts even if he did not subjectively intend or anticipate those consequences.[5]

The Texas Supreme Court recently reaffirmed this approach. In *Trinity Universal Insurance Co. v. Cowan*,[6] Gage, a photo lab clerk, duplicated copies of provocative photographs taken of Cowan, a female customer. Gage showed these photographs to his friends, left them with his friends, and made his friends promise to destroy the photographs. But his friends did not destroy them. Instead, they showed the photographs to Cowan's friend who told Cowan

1. *See American States Ins. Co. v. Arnold*, 930 S.W.2d 196, 199 (Tex.App.—Dallas 1996, writ denied); *see also Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–59 (Tex.1985) (recognizing procedures for appellate review of summary judgment are well established and describing those procedures).

2. 500 S.W.2d 633, 635 (Tex.1973); *see State Farm Fire & Casualty Co. v. S.S.*, 858 S.W.2d 374, 377 n. 2 (Tex.1993) (reaffirming the *Argonaut* test); *see, e.g., Metropolitan Property & Casualty Co. v. Murphy*, 896 F.Supp. 645, 648 (E.D.Tex.1995); *State Farm Lloyds v. Kessler*, 932 S.W.2d 732, 738 (Tex.App.—Austin 1996, writ denied); *Misle v. State Farm Mut. Auto. Ins. Co.*, 908 S.W.2d 289, 291 (Tex.App.—Austin 1995, no writ); *Southern Farm Bureau Casualty Ins. Co. v. Brock*, 659 S.W.2d 165, 166–67 (Tex.App.—Amarillo 1983, writ ref'd n.r.e.) (all applying the *Argonaut* test).

3. *Republic Nat'l Life Ins. Co. v. Heyward*, 536 S.W.2d 549, 555–56 (Tex.1976); *see S.S.*, 858 S.W.2d at 377.

4. *See Heyward*, 536 S.W.2d at 555–56; *see also S.S.*, 858 S.W.2d at 377.

5. *Heyward*, 536 S.W.2d at 555–56.

6. 945 S.W.2d 819 (Tex.1997).

about the photographs. Cowan then sued Gage. In the resulting coverage dispute, Gage claimed his conduct was accidental because he never intended to cause Cowan any injury. The supreme court rejected this argument, determining that Gage's conduct was not accidental: He intentionally made duplicate copies of Cowan's photographs and the injury she suffered—invasion of privacy—" 'ordinarily follow[ed]' from Gage's conduct and the injuries could [have been] 'reasonably anticipated from the use of the means, or an effect' that Gage can 'be charged with . . . producing.' " [7]

■ With these guidelines in mind, we examine the summary judgment evidence to determine whether Wessinger's December 14, 1991 conduct constitutes an accident. No evidence suggests that Wessinger's acts were anything other than volitional and intentional. For example, no evidence suggests that Wessinger slipped, fell, or reached out causing his fist to come mistakenly into contact with Morrison's face. Instead, the undisputed evidence establishes that for whatever reason, Wessinger made a fist and punched or otherwise struck Morrison in the face and head several times. Neither Wessinger nor Morrison disputes these facts. This conduct is, on its face, voluntary and intentional and thus not accidental.[8]

Wessinger and Morrison propose three reasons why, contrary to this conclusion, Wessinger's conduct was accidental. First, without citing or recognizing Argonaut's "accident" definition, they claim that "if the result [of an act] is unusual, unforeseen and unexpected, the requirement of 'accidental means' or 'accident' is satisfied." For support, Wessinger and Morrison rely on the Austin Court of Appeals's Cowan decision.[9] The intermediate appellate court held "an

occurrence takes place where the resulting injury or damage was unexpected or unintended, regardless of whether the policyholder's acts were intentional." [10] Under this interpretation, "if the insured did not know or anticipate that his intentional act would produce the injury, then as to the insured, the injury produced was unexpected, unforeseen, and, therefore, accidental." [11] After we submitted Wessinger and Morrison's appeal, however, the Texas Supreme Court reversed the court of appeals's Cowan decision and expressly rejected the portion of the opinion on which Wessinger and Morrison rely.[12] Instead, relying, in part, on the approach articulated in Argonaut, the supreme court determined no accident occurred. We, therefore, conclude that Wessinger and Morrison can no longer rely on the intermediate appellate court's decision in Cowan.

■ Second, Wessinger and Morrison urge that their affidavit testimony recounting Wessinger's lack of intent to hit or injure Morrison creates a fact issue precluding summary judgment. At oral argument, they admitted that these statements only reflect their understanding of Wessinger's subjective intent. But under the Argonaut analysis we look only to objective evidence; thus, Wessinger's subjective lack of intent cannot create a fact issue.

In Argonaut, the insured, Maupin Construction Company, contracted with a man named Kipper to remove sand and gravel from property to use in roadway fills. Maupin removed 5,744 cubic yards of material from the property. But later, Maupin learned that Kipper was merely a tenant in possession of this property and had no right to enter into this contract. The property's owner then sued Maupin for trespass and injury to property. Maupin filed suit against

---

7. *Id.* at 828 (citation omitted).

8. *See Safeco Ins. Co. v. Dotts*, 38 Wash.App. 382, 685 P.2d 632, 634 (1984) (parties agreed that backhanded slap to face was a "deliberate act"); *see also Murphy*, 896 F.Supp. at 648 (drilling hole in bathroom and bedroom walls and watching female guest shower, bathe, dress, and sleep is intentional conduct).

9. 906 S.W.2d 124 (Tex.App.—Austin 1995), *rev'd*, 945 S.W.2d 819 (Tex.1997).

10. *Id.* at 129.

11. *Id.* (citations omitted).

12. *See Cowan*, 945 S.W.2d at 827–28 ("That Gage did not expect or intend Cowan to learn of his actions is of no consequence to our determination of whether his actions were an accident.").

its insurer, claiming that the insurer had to pay the damages because the property damage was accidental and thus a covered occurrence within the policy. After announcing the test already discussed, the supreme court held that Maupin's acts were not accidental. That Maupin did not subjectively intend to injure the property by removing the material without permission did not matter. As long as Maupin intended to do the act that caused the injury, its conduct was not accidental. Thus, even though Maupin believed it had permission to remove the material and did not intend to trespass or cause injury, because Maupin deliberately removed the material, its conduct was not accidental.[13]

█ Based on this reasoning, we conclude that Wessinger's subjective intent regarding his conduct's results, like Maupin's, is irrelevant when determining whether his conduct was accidental. Here, the undisputed summary judgment evidence establishes that Wessinger committed a deliberate and volitional act when he punched or struck Morrison. Consequently, his conduct was voluntary and intentional.

Third, Wessinger and Morrison argue that Wessinger's intoxication that evening so impaired his mental faculties that he could not commit a voluntary and intentional act. They cite a case from Massachusetts, *Hanover Insurance Co. v. Talhouni*,[14] for support. In that case, the insured argued that because he was under the influence of LSD when he attacked two people, he could not form the requisite intent to cause their injuries. Thus, his actions were not excluded from coverage under the intentional injury exclusion. Basing its decision on considerations of "public interest that the victim be compensated, and the view that the victim is aided by the narrowest view of the policy exclusion," the court agreed that "intoxication may destroy for purposes of the exclusion, the capacity to form the requisite intent." [15]

In response, Fire Insurance brings *Group Insurance Co. v. Czopek*,[16] a Michigan case, to our attention. In *Czopek*, the insured got drunk on New Year's Eve. Two police officers stopped him from dangerously walking down the middle of the street at night and tried to arrest him. The insured resisted arrest and struggled with the officers, kicking and hitting them. As a result, the officers suffered various injuries. The Michigan court had to decide whether this event constituted an occurrence—defined as an accident—under the insured's homeowner's policy. Like Wessinger and Morrison, the insured argued that intoxication vitiated his intent; therefore, his acts were accidental under the policy.

The Michigan Supreme Court disagreed that voluntary intoxication can be asserted as a defense to any intent requirement in an insurance policy. The court reasoned that "[a]n intoxicated person is responsible for his actions, even though he may have voluntarily ingested intoxicating substances." [17] To hold otherwise, the court determined, would improperly relieve individuals of responsibilities for their own conduct:

> The precedent of self-immunity that such a policy would create would allow commission of a crime without the requisite responsibility. Further, to allow voluntary intoxication as a defense in a civil action is also unjust. Where an insured willingly consumes an intoxicating substance, he may not use that consumption as a defense to the requirement of intent in an insurance policy. To allow such a defense would be to create the ability to act unwisely without the requisite financial responsibility.[18]

Applying this reasoning, the court held that the insured's intoxication did not excuse his assault on the two police officers. Nor did his voluntary intoxication render his actions

---

13. *Argonaut*, 500 S.W.2d at 635; *see Cowan*, 945 S.W.2d at 828 (holding insured's subjective intent to injure irrelevant to determine if an accident occurred when insured intended his conduct and injury "ordinarily followed" from conduct).

14. 413 Mass. 781, 604 N.E.2d 689 (1992).

15. *Id.* 604 N.E.2d at 692 (citations omitted).

16. 440 Mich. 590, 489 N.W.2d 444 (1992).

17. *Id.* 489 N.W.2d at 449.

18. *Id.*

involuntary and unintentional and thus accidental.[19]

We recognize that jurisdictions split on this question.[20] And while we found no Texas case addressing this issue, for three reasons we reject Wessinger and Morrison's claim that Wessinger's intoxication prevented him from forming the requisite intent to commit a voluntary and intentional act.

First, both Texas criminal and civil law have long prevented a person from claiming voluntary intoxication as a defense to liability. Texas Penal Code section 8.04 specifically prohibits the use of voluntary intoxication as a defense to liability: "Voluntary intoxication does not constitute a defense to the commission of a crime."[21] Similarly, in the civil context, voluntary intoxication is not a defense to either negligent or reckless conduct.[22] In so holding, the Texas Commission of Appeals ruled that "[i]f intoxication is not a defense to a crime and does not excuse ordinary negligence, it should not relieve one from the consequences of a wrong greater than mere negligence, his heedless and reckless disregard of the rights of others.... To hold otherwise would be to put a premium on drunkenness."[23] From these cases, we glean a general policy in Texas not to excuse conduct simply because the actor was voluntarily intoxicated.

Second, Texas public policy echoes the policy rationale on which the *Czopek* court relied. In *Czopek*, the court refused to allow the insured to assert voluntary intoxication to defeat the "accident" definition's intent requirement because to do so "would be to create the ability to act unwisely without the requisite financial responsibility."[24] Texas public policy, too, "prohibits permitting an insured to benefit from his own wrongdoing. 'It is axiomatic in the insurance industry that one should not be able to insure against one's own intentional misconduct.' ... The rationale behind the public policy is that the insured is more likely to engage in behavior which is harmful to society if he believes he will not have to bear the financial costs of his intentional indiscretions."[25] We think this public policy supports the conclusion, as it did in *Czopek*, that voluntary intoxication cannot be used to defeat the intent requirement in an insurance policy. Allowing that result would relieve individuals who commit intentional acts while voluntarily intoxicated of financial responsibility for their drunken conduct and encourage, rather than deter, this kind of behavior.

Third, a federal court applying Texas law has implicitly rejected Wessinger and Morrison's argument. In *Metropolitan Property & Casualty Co. v. Murphy*,[26] a homeowner's insurer sought a declaration that it owed no duty to defend or indemnify its insured against a claim alleging that the insured watched a female houseguest shower, bathe, dress, and sleep through holes he drilled in the bedroom and bathroom walls. In an amended petition, the houseguest alleged the insured suffered from sexual addiction, narcotics or alcohol addiction, and voyeurism. She claimed these diseases or addictions caused the insured's conduct, rendering it involuntary and unintentional. The district

---

19. *Id.*

20. *See generally* James. L. Rigelhaupt, Annotation, *Liability Insurance: Intoxication or Other Mental Incapacity Avoiding Application of Clause in Liability Policy Specifically Exempting Coverage of Injury or Damage Caused Intentionally by or at Direction of Insured*, 33 A.L.R.4th 983 (1984) (describing split among jurisdictions, but not describing any conclusive majority view).

21. TEX. PENAL CODE ANN. § 8.04(a) (Vernon 1994); *see Torres v. State*, 585 S.W.2d 746, 749 (Tex. Crim.App.1979); *Dubois v. State*, 164 Tex.Crim. 557, 301 S.W.2d 97, 101 (1957), *cert. denied*, 356 U.S. 921, 78 S.Ct. 705, 2 L.Ed.2d 717 (1958); *Juhasz v. State*, 827 S.W.2d 397, 406 (Tex.App.— Corpus Christi 1992, pet. ref'd).

22. *Scott v. Gardner*, 137 Tex. 628, 635–36, 156 S.W.2d 513, 517 (1941); *see also Bristow v. Bristow*, 834 S.W.2d 497, 502 (Tex.App.—Eastland 1992, no writ) (voluntary intoxication does not excuse a party from perfecting a timely appeal; nor is it evidence of extrinsic fraud so appellant can appeal by bill of review).

23. *Scott*, 156 S.W.2d at 517.

24. *Czopek*, 489 N.W.2d at 449.

25. *Decorative Center v. Employers Casualty Co.*, 833 S.W.2d 257, 260 (Tex.App.—Corpus Christi 1992, writ denied).

26. 896 F.Supp. 645 (E.D.Tex.1995).

court disagreed, holding that although these diseases or addictions may explain why the insured allegedly secretly watched his houseguest, "[they do] not change the fact that her causes of action are based upon voluntary and intentional conduct of [the insured], to-wit watching her and invading her privacy by looking at her through the holes in the wall." [27]

Here, Wessinger voluntarily became intoxicated. For the reasons already discussed, that fact does not destroy the volitional nature of his conduct. Wessinger deliberately, albeit drunkenly, repeatedly hit Morrison in the head. While Wessinger's intoxication may explain why he violently attacked his friend Morrison, it does not change the fact that punching or striking Morrison was a voluntary and intentional act and thus not accidental. Applying Argonaut's "accident" definition, we conclude Wessinger's conduct was voluntary and intentional.

■ Because we conclude that Wessinger's acts were voluntary and intentional conduct, we must determine under Argonaut whether Morrison's injuries are a natural result of that conduct. The parties agree that Morrison's injuries qualify as bodily injury as defined in the policy. They do not agree that these injuries are the natural result of Wessinger's conduct.

Wessinger and Morrison argue that Morrison's injuries do not naturally result from Wessinger's conduct because "Morrison's injuries here are vastly greater than could reasonably be expected to follow such an event." Fire Insurance counters that "[c]ommon knowledge would dictate that when an intoxicated, unstable individual strikes another in the face with a fist, there is a likelihood of personal injury. Wessinger legitimately may not have foreseen the extent of Morrison's injury, but reasonable minds could not differ as to the likelihood of some injury naturally resulting."

We agree with Fire Insurance. When someone punches another person in the face,

an eye injury may naturally result. In other words, an eye injury "ordinarily follows, may be reasonably anticipated, and ought to be expected" when someone repeatedly strikes another in the face near the eyes as Wessinger did here.[28] That Morrison's eye injury was serious and permanently disabling does not change that fact. Simply because the degree of injury suffered may have been great does not make the specific type of injury alleged any less a natural result of the act.[29] Neither the degree of injury nor the injury's foreseeability is the test under Argonaut.[30]

For these reasons, we conclude that Wessinger's conduct was voluntary and intentional and that Morrison's injuries naturally resulted from that conduct. Wessinger's conduct was thus not an accident and, consequently, not a covered occurrence. Fire Insurance, therefore, has no duty to indemnify Wessinger. We overrule Wessinger and Morrison's second point of error.

Because we overrule Morrison and Wessinger's second point of error, we need not address their first or third points of error.[31] We affirm the trial court's judgment.

---

27. *Id.* at 648.

28. *Heyward,* 536 S.W.2d at 555.

29. *See Misle,* 908 S.W.2d at 291–92 (merely because insured did not intend extent of injury

caused by his conduct did not render his conduct accidental).

30. *Argonaut,* 500 S.W.2d at 635.

31. *See* Tex.R.App. P. 90(a).