NUMBER 13-01-343-CV

 

                             COURT OF APPEALS

 

                   THIRTEENTH DISTRICT OF TEXAS

 

                                CORPUS CHRISTI

 



 

ACCEPTANCE INSURANCE COMPANY

AND REDLAND INSURANCE COMPANY,                               Appellants,

 

                                                   v.

 

LIFECARE CORP.,                                                                  Appellee.

 

 



                        On appeal from the 136th District Court

                                of Jefferson
County, Texas.

 

 



                                   O P I N I O N

 

                   Before Justices Hinojosa,
Rodriguez, and Wittig[1]

                                   Opinion by
Justice Wittig

 








This is a commercial insurance coverage dispute concerning the
meaning of the term Aoccurrence.@  A comprehensive general liability (CGL)
policy was issued by appellants, 
Acceptance Insurance Company and Redland Insurance Company, in favor of
their insured, Lifecare Corporation, appellee. 
The factual contentions center around a former employee of Lifecare.
Lifecare was sued for negligently providing inaccurate information in a job
information request.   Both sides filed
motions for summary judgment.  The trial
court denied appellants= motion and
later granted a partial summary judgment for appellee.   A bench trial determined the remaining
issues concerning the reasonableness of a settlement and attorneys= fees.  Only the coverage issues, disposed of by
summary judgments, are appealed.  We
examine the trial court=s determination
that the contractual terms of appellants= policy
provided coverage.  We apply contract law
to address the critical terms Aoccurrence,@ Aaccident,@ and Aintentional,@ as well as
appellants= claimed
exclusion under Aemployment
related activities.@   We will affirm.

Background








This appeal originates from a third party action by Lifecare
against appellants.  Lifecare had been
sued in the underlying action because it negligently provided information which
it should have known was incorrect. 
Specifically, plaintiff=s pleadings
against appellee charged: ADefendant
LIFECARE CORPORATION is guilty of certain acts and omissions, each of which
constitute negligence and each of which was a proximate cause of the Plaintiff=s injuries and
damages as more fully set out herein. 
Such negligence [sic] acts and omissions arise from the failure of
Lifecare to exercise ordinary care in determining that the information it
transmitted concerning Mr. Willis was accurate.@[2]  

After leaving Lifecare, Gary Willis ended up working at the
Thomas Care Center.  Thomas Care Center
had contacted Lifecare but received some wrong information about Willis.  Later, while working for Thomas Care Center,
Willis was involved in a sexual assault of Nettie Belle DavisBplaintiff in
the original action.  Davis sued Thomas
Care and Lifecare.  Lifecare filed a
third party action against appellants after they denied a request for defense
and indemnification under the CGL policy.

Appellants argue two issues. 
First, they contend there is no coverage under Acoverage A@ because there
was no occurrence.  Next they argue, in
the same issue, there is no coverage under policy part B, because there is no
personal injury claimed that was covered and the only relevant inquiry is
whether the insured=s liability is
related and interdependent to the underlying sexual tort.[3]  In their second issue, appellants argue for
the application of the AEmployment-Related
Practices Exclusion.@

Standard of Review








We review the trial court's granting of a motion for summary
judgment de novo. Natividad v. Alexsis, Inc., 875 S.W.2d 695, 699
(Tex. 1994); Tex. Commerce Bank Rio Grande Valley v. Correa, 28 S.W.3d
723, 726 (Tex. App.BCorpus Christi
2000, pet. denied).  Appellee was
required to establish that no genuine issue of material fact existed and that
judgment should be granted as a matter of law. 
Tex. R. Civ. P. 166a(c); Nixon
v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 548 (Tex. 1985).  Where the only question presented to the
trial court was a question of law and both sides moved for summary judgment,
the appellate court should render the judgment that the trial court should have
rendered.  Jones v. Strauss, 745
S.W.2d 898, 900 (Tex.1988); Cigna Lloyds Ins. Co. v. Bradleys' Elec., Inc.,
33 S.W.3d 102, 104 (Tex. App.BCorpus Christi
2000, pet. denied); The Cadle Co. v. Butler, 951 S.W.2d 901, 905 (Tex.
App.BCorpus Christi
1997, no writ).

Discussion

Occurrence

Appellants
argue there was no Aoccurrence@ under the CGL
policy.  The policy provided in pertinent
part:

SECTION 1 - COVERAGES

COVERAGE A.  BODILY INJURY AND PROPERTY DAMAGE

 

1.     Insuring Agreement

 

        a.        We
will pay those sums that the insured becomes legally obligated to pay as
damages because of >bodily injury= or >property
damage:= to which this
insurance applies.

 

        b.        This
insurance applies to >bodily injury= and >property damage= only if:

(1) The >bodily injury= or >property damage= is caused by
an occurrence that takes place in the >coverage
territory;= and








(2) The >bodily injury= or >property damage= occurs during
the policy period.

 

       c.         Damages
because of >bodily injury= include
damages claimed by any person or organization for care, loss of services or
death resulting at any time from the >bodily injury.=                   

 

AOccurrence@ is defined
under section 5: A9.  >Occurrence= means an
accident, including continuous or repeated exposure to substantially the same
general harmful conditions.@  Accident is not defined.  

Section 1,
coverage A (2)(a) states, the coverage is inapplicable to A>bodily injury=. . . expected
or intended from the standpoint of the insured.@[4]








Appellants
argue that although Aaccident@ is not defined
under the policy, the supreme court has adopted a general rule holding where
acts are voluntary and intentional and the injuries are the natural result of
the act, the result was not caused by accident even though that result may have
been unexpected, unforeseen, and unintended. 
Wessinger v. Fire Ins. Exch., 949 S.W.2d 834, 837-38 (Tex. App.BDallas 1997, no
writ) (describing analysis of whether injuries were caused by
"accident" as "two‑step" process under  Argonaut Southwest Ins. Co. v. Maupin,
500 S.W.2d 633, 635 (Tex.1973)). 
Following this argument and authority, we first determine whether
specific acts alleged to have caused the plaintiff's injuries in the underlying
suit were "voluntary and intentional."  If so, then we next determine whether the
injuries alleged were a "natural result" of the acts.  Wessinger, 949 S.W.2d at 838.  However, we first observe that Wessinger was
voluntarily intoxicated and thus his conduct in striking another was voluntary
and intentional.  Both the nature of
Wessinger's conduct and the injuries naturally resulted from the intentional
conduct.  Id. at 839.  There are no such allegations against
Lifecare.  See id. at 837.  Rather, the contributing acts by the insured
Lifecare were neither voluntary nor intentional.  The insured and its agents= or employees= conduct said
to have caused the injuries were purely and simply negligence.  The specific and only facts alleged
against Lifecare were the negligent representations.  AIf we determine
the acts that produced the alleged injuries were committed involuntarily and
unintentionally, our inquiry stops there because the results of the acts would
be accidental.@  Id. 
AWhen a result
is not the natural and probable consequence of an act or course of action, it
is produced by accidental means.@  Id.[5]  Thus, even under Wessinger and Maupin,
Lifecare=s acts that
produced the injuries were involuntarily and unintentional and thus accidental.








Citing Folsom Inv. Inc. v. Am.
Motorists Ins. Co. 26 S.W.3d 556 (Tex. App.BDallas 2000, no pet.), appellants next
argue the negligence of Lifecare was related and interdependent on the
intentional conduct of its former employee. 
In Folsom, the underlying plaintiffs alleged that while they
worked for Folsom, O'Mealey made unwelcome sexual advances toward them,
requested sexual favors, used sexually abusive and vulgar language, and engaged
in other verbal and physical conduct.  Id.
at 561.  The plaintiffs also alleged
Folsom knowingly allowed O'Mealey's actions to continue.  AHere, Folsom's
liability is related to and interdependent on O'Mealey's tortious activities.@  Id. 
O'Mealey's acts of sexual harassment were not an accident because they
were intentional and the harm caused by the acts was a natural or probable
result of those acts.  Id.

Folsom does not rely on Texas authority,
but rather turns to the federal system=s
interpretation of Texas law.  See Am.
States Ins. Co. v. Bailey, 133 F.3d 363 (5th Cir. 1998).  There, two women sued Bailey, who was the
pastor‑in‑charge of First United Methodist Church of Fort Worth,
four associate ministers, and the church.  Id. at 366.  The women alleged Bailey committed various sexual
improprieties and that the church and the associate ministers knew or should
have known of Bailey's conduct and should have attempted to stop his behavior.  Id. 
The women's specific claims against the church and the associate
ministers included allegations of negligence, including negligent hiring and
supervision of Bailey.  Id. at
367.

However, Bailey had a specific
sexual act exclusion.  Anything Aarising out of@  a sexual act was excluded under the specific
policy language.  The Bailey court
held:

The
plain meaning of "sexual action" as described in the exclusion
includes all of Bailey's misconduct. It is impossible to characterize Bailey's
behavior as other than having a "sexual connotation or purpose" and
being "performed for sexual gratification." The exclusion establishes
very broad parameters. . . .

 








This court has held that the words "arising out
of,"  when used within an insurance
policy, are "broad, general, and comprehensive terms effecting broad
coverage." The words are "understood to mean 'originating from,'
'having its origin in,' 'growing out of' or 'flowing from.' " Without
Bailey's sexual misconduct, Cooke and Levin would have no claims against FUMC
and the four associate ministers. Every alleged harm caused to Cooke and Levin
by FUMC and the four associate ministers stems from and is integrally related
to Bailey's acts. Therefore, . . . all of the factual allegations that underlie
Cooke's and Levin's legal claims against FUMC and the four associate ministers
arise out of Bailey's sexual actions, thereby precluding coverage under Western
World's policies.  

 

Id. at 360
(internal citations and footnote omitted).

Bailey does, by way of
dicta, support in an extenuated fashion, appellants= argument.  Appellants argue from Folsom and Bailey,
that the complained of conduct was Arelated to and
interdependent.@  The Bailey court=s rationale was
based upon agency principles not at all applicable to the facts alleged against
Lifecare.  The Bailey court
observes:

For  instance, in New
York Life Ins. Co. v. Travelers Ins. Co., New York Life was sued for the
negligent hiring, training, and supervision of one its employees, who allegedly
defrauded a New York Life client. See New York Life Ins. Co., 92 F.3d at
337, 340. The court found that the employee's underlying fraudulent acts were
not an "occurrence" under the policy. See id. at 339.
Consequently, the court held that the claims against New York Life were
excluded from coverage because "[a] claim against a principal is 'related'
to and 'interdependent' on a claim against an agent if the claim against  the principal would not exist absent the
claim against the agent." Id. at 340.

 








Id. at 371-72.[6]   The case law cited by appellant supports the
proposition that when an agent=s conduct is Arelated and
interdependent@ with that of
the principal, and absent the agent=s conduct,
there would be no claim against the principal, there is no covered
occurrence.  See id.  This line of cases does not however address
our situation.  There is no existing
agency relationship between the sexual predator and appellants= insured
Lifecare.  There are no factual
allegations of intent against the insured. 
There are no agency interdependency links between the conduct of
Lifecare and its ex-employee.  

In any event, the Texas Supreme Court
recently has expressly found this federal authority  Aerroneous:@ A[W]e conclude
the Fifth Circuit=s rule
improperly imputes the actor=s intent to the
insured.  That is to say, whether one who
contributes to an injury is negligent is an inquiry independent from whether
another who directly causes the injury acted intentionally.@  King v. Dallas Fire Ins. Co., 45 S.Ct.
J. 1224, 2002 Tex. LEXIS 141, at *18 (May 30, 2002).[7]

Appellant next argues GATX Leasing
Corp. v. Nat=l Union Fire
Ins. Co.,
64 F.3d 1112 (7th Cir. 1995).  We quote:

A
volitional act does not become an accident simply because the insured's
negligence prompted the act. Injury that is caused by negligence must be
distinguished from injury that is caused by a deliberate and contemplated act
initiated at least in part by the actor's negligence at some earlier point. The
former injury may be an accident.... However, the latter injury, because it is
intended and the negligence is attenuated from the volitional act, is not an
accident.

 

Id. at 1118.  In context, GATX
went on to hold: AWhere acts are
voluntary and intentional and the injury is the natural result of the act, the
result was not caused by accident even though that result may have been
unexpected, unforeseen and unintended.@ Id.








In GATX, the claims against it
involved a Houston area petroleum product and transfer station.  Id. at 1113.  GATX and related companies were charged by
Arco and TCR, among others, alleging breach of contract, breach of guarantee,
negligence, fraudulent inducement and misrepresentation, and conversion.  Id. at 1114.  In June 1985, Arco and TCR discovered that
vast quantities of their stored products were missing, and TCR found that
further quantities of its fuel had been degraded by foreign chemical substances.  Id. at 1113.  This discovery was delayed, because GATX and
its employees represented that their inventories were consistent with the
quantities of product originally delivered for storage, and that GATX employees
conspired to hide the thefts of the product. 
Id.  AAn examination
of the pleadings in the underlying litigation makes clear that the plaintiffs
in that case sought recovery against GATX for theft, conversion, and
contamination of petroleum products.@  Id. at 1116.  The gravamen of the complaint was theft and
contamination, both volitional and intentional acts.  The negligence portion alleged AGATX had
supervised its personnel in a negligent manner and therefore permitted the
theft.A Id. at 1118.[8]  








Thus, we read appellant=s argument in
context: Intentional theft and contamination does not become an accident simply
because the insured=s action
prompted the intentional act.  Injury
caused by negligence, must be distinguished from injury that is caused by a
deliberate and contemplated act B like theft B initiated at
least in part by the actor's (insured=s) negligence
at some earlier point.  Once again,
Lifecare and its agents committed no volitional act causing injury.  Lifecare is not charged with rape, theft,
contamination or any intentional or volitional act.  GATX is inapplicable.

Appellants cite several unpublished cases
and New York cases which describe combinations of intentional acts B typically
sexual conduct B and
allegations of negligence.  In all these
scenarios, the joint assertions of intent and negligence are against the same
insured.  Most involve agency principles,
discussed above.  None address our
context.








Finally, appellants argue that in the
absence of its former employee=s conduct,
there would be Ano liability
for negligent referral.@[9]  They cite Old Republic Ins. Co. v.
Comprehensive Health Care Assocs. Inc., 2 F.3d 105, 109 (5th Cir.
1993).  First, we note this case deals
with sexual abuse exclusions and specifically does not address the Aoccurrence@ issues.  Id. at 107-08.  Old Republic does state: Athe negligence
claims against CHCA are inextricably intertwined with the underlying sexual
harassment and discrimination claims.  In
Texas, because the underlying claim for intentional harassment is excluded from
policy coverage, the interrelated negligence and slander claims are also not
covered.@  Id. at 108 (citing Thornhill v.
Houston Gen. Lloyd's, 802 S.W.2d 127, 130 (Tex. App.BFort Worth
1991, no writ); Centennial Ins. Co. v. Hartford Accident & Indem. Co.,
821 S.W.2d 192, 194‑95 (Tex. App.BHouston [14th
Dist.] 1991, no writ)).  But in addition
to the specific sexual abuse exclusion, there were also a slander and other
applicable employment-related exclusions. 
Id. at 107-09.  And, once
again, all of the allegations, intentional, sexual, slander and negligence,
were asserted in one intertwined basket, against the  same employer, and the same insured.  Id. at 109.

This is much the same concept the supreme
court found in Bonded Realty, Inc. v. St. Paul Ins. Co., 583 S.W.2d 619
(Tex. 1979).  Although one act by the
insured was not found to be knowingly false, Athat act was inseparable from the other
acts where knowledge of the falsity was established and was a concurrent cause
of the damage sustained.A  Id. at 620.  Unlike Bonded Realty, Lifecare was not
charged with any intentional conduct that is interrelated, inseparable, or
concurrent conduct of the insured. 
In any event, the Texas Supreme Court has rejected this Arelated and
interdependent@ doctrine.
King, 2002 Tex. LEXIS 141, at *17-18.








We conclude there are a number of reasons
the trial court properly found coverage. 
First, rules of construction favor the insured and we look to the
allegations that would afford coverage.  
As a general rule, insurance contracts are interpreted under the same
rules of construction as standard contracts.  Barnett v. Aetna Life Ins. Co., 723 S.W.2d
663, 665 (Tex. 1987).  However, if the
insurance policy is susceptible to more than one reasonable interpretation, any
ambiguity will be resolved by adopting a construction that favors the
insured.  Nat=l Union Fire
Ins. Co. v. Hudson Energy Co., 811 S.W.2d 552, 554 (Tex. 1991); Ramsay
v. Maryland Am. Gen. Ins. Co., 533 S.W.2d 344, 349 (Tex. 1976).  The duty to defend arises if the factual
allegations against the insured, fairly and reasonably construed, state a cause
of action potentially covered by the policy. 
Cullen/Frost Bank of Dallas, N.A. v. Commonwealth Lloyd's Ins. Co.,
852 S.W.2d 252, 255 (Tex. App.BDallas 1993,
writ denied).  If a petition against an
insured alleges only facts that are not covered by the policy, the
insurer is not required to defend.  Id. 


The live pleadings and factual allegations
against Lifecare demonstrate only a negligent representation claim.  The operative facts giving rise to any
liability to the insured Lifecare, are not intentional but instead are indicative
of an occurrence, at least as to the parties to the contract, the insured and
the insurer.  We believe this claim,
fairly and reasonably construed, states a cause of action potentially covered
by the policy.       








Second, we observe some confusion at the
line of interplay between contract and tort law.  This is a contract case.  The elements of a breach of contract claim
are:  (1) the existence of a valid
contract;  (2) performance or tendered
performance by the plaintiff;  (3) breach
of the contract by the defendant;  and
(4) damages to the plaintiff resulting from that breach.  Wright v. Christian & Smith, 950
S.W.2d 411, 412 (Tex. App.BHouston [1st
Dist.] 1997, no writ) (citing Hussong v. Schwan's Sales Enters., Inc.,
896 S.W.2d 320, 326 (Tex. App.BHouston [1st
Dist.] 1995, no writ)). If we interpret under the same rules of construction as
standard contracts, then it is error for a court to apply a tort Abut for@ causation
rule, to contract construction rules.  See
King, 2002 Tex. LEXIS 141, at *15; see also Barnett, 723 S.W.2d at
665. 

There is no argument that all contractual
elements are met.[10]  The only issues flow from interpretation of
the contract between the insured and insurer. 
Following contract law, we are constrained to view the terms Aoccurrence@ and Aaccident@ from the
perspective of the two contracting parties under the eight corners rule.  King, 2002 Tex. LEXIS 141, at *4.

 Third, the insurance policy in question is a
broad form, all-risk policy.  It is
purported to be Acomprehensive@ for all Ageneral
liability@ unless
excluded by specific policy language. 
Exceptions and limitations in an insurance policy are strictly construed
against the insurer. Kelly Assocs., Ltd. v. Aetna Cas. & Sur. Co.,
681 S.W.2d 593, 596 (Tex. 1984).  
Normally, the language and terms of an insurance policy are chosen by
the insurance company.  This being so,
when the language chosen is susceptible of more than one construction, such
policies should be construed strictly against the insurer and liberally in
favor of the insured.  Barnett,
723 S.W.2d at 666 (citing Glover v. Nat=l Ins. Underwriters, 545 S.W.2d
755, 761 (Tex. 1977); Ramsay v. Maryland Am. Gen. Ins. Co., 533 S.W.2d
344, 349 (Tex. 1976);  Royal Indem. Co.
v. Marshall, 388 S.W.2d 176, 180 (Tex. 1965)).[11]








Fourth, both the term accident and
intentional conduct must be viewed from the point of view of insured and intent
of insured.  King, 2002 Tex. LEXIS
141, at *18.  Courts determine whether
certain conduct constitutes an "accident" for purposes of insurance
coverage on a case‑by‑case basis. 
Wessinger, 949 S.W.2d at 837. 
An event is accidental within the meaning of the policy coverage if it
is "an effect that cannot be reasonably anticipated from the use of [the
means that produced it], an effect which the actor did not intend to
produce and which he cannot be charged with the design of producing."  Cowan, 945 S.W.2d at 827‑28
(emphasis added) (quoting, approving, and distinguishing Republic Nat'l Life
Ins. Co. v. Heyward, 536 S.W.2d 549, 555 (Tex. 1976)).  On the other hand, an intentional act that results
in injuries which would ordinarily follow from, or could reasonably be
anticipated from, the intentional act is not an occurrence within the meaning
of the policy definition.  Cowan,
945 S.W.2d at 827‑28.

The Wessinger court agreed with Cowan:


When
a result is not the natural and probable consequence of an act or course of
action, it is produced by accidental means. 
The natural result of an act is the result that ordinarily follows, may
be reasonably anticipated, and ought to be expected.  This standard is objective.  A person is held to intend the natural and
probable results of his acts even if he did not subjectively intend or
anticipate those consequences. 

 

Wessinger, 949 S.W.2d at 837‑38 (citing Heyward,
536 S.W.2d at 556).








In Schlakzug, the supreme court
held:  Aif the insured did not know or anticipate
that the plucking of a hair from his nose would produce a wound therein, then
as to him the wound so produced would be unexpected and unforeseen, and
therefore would be an accidental wound.@ Pac. Mut.
Life Ins. Co. of California v. Schlakzug, 183 S.W.2d 709, 711 (Tex. 1944).

Schlakzug in turn relies
upon another supreme court case, Int=l Travelers= Ass=n v. Francis.  And Francis relies upon Cooley's
Briefs on Insurance (2d Ed.).  The exact
language is instructive and appears to be followed by the Cowan, Wessinger
and King courts:

An
effect which is the natural and probable consequence of an act or course of
action is not an accident, nor is it produced by accidental means.  It is either the result of actual design, or
it falls under the maxim that every man must be held to intend the natural and
probable consequence of his deeds.  On
the other hand, an effect which is not the natural or probable consequence of
the means which produced it, an effect which does not ordinarily follow and
cannot be reasonably anticipated from the use of such means, an effect which
the actor did not intend to produce and which he cannot be charged with the design
of producing, is produced by accidental means. 
It is produced by means which was neither designed nor calculated to
cause it.  Such an effect is not the
result of design, cannot be reasonably anticipated, is unexpected, and is
produced by an unusual combination of fortuitous circumstances; in other words,
it is produced by accidental means.  Cooley's Briefs on Insurance (2d Ed.)
vol. 6, p. 5234.

 

 Int=l Travelers'
Ass'n v. Francis, 23 S.W.2d 282, 285 (Tex. 1930).








We examine one last definition of accident
from a garage liability policy addressed in Travelers Ins. Co. v. Volentine,
578 S.W.2d 501 (Tex. Civ. App.BTexarkana 1979,
no writ).  A garage mechanic did a valve
job for the plaintiff.  Id. at
502.  The engine exploded, rendering it
useless.  Id. at 503.  The Travelers Insurance Company argued that
the general coverage provisions of the policy excluded the plaintiff=s claim because
his damages were not caused by an accident, and the policy provided coverage
only for liability due to an "occurrence," which the policy defined
as an accident.  Id.  The court held: AThe term
accident, as used in a policy of this type, means an unexpected, unforeseen or
undesigned happening or consequence from either a known or unknown cause.@  Id. (citing Employers Cas. Co. v.
Brown‑McKee, Inc., 430 S.W.2d 21 (Tex. Civ. App.BTyler 1968,
writ ref'd  n.r.e.);  Bundy Tubing Co. v. Royal Indem. Co.,  298 F.2d 151 (6th Cir. 1962);  Hauenstein v. St. Paul‑Mercury Indem.
Co., 242 Minn. 354, 65 N.W.2d 122 (1954)). 
Although the performance of the work itself might or might not be
considered an accident, the destruction of the engine as a result of the
malfunction of one of the repaired valves was certainly unexpected and unintended,
and constituted an accident within the meaning of the policy provisions.  Id. 

 Fifth, precedent also shows there was no Aintent@ under these
circumstances.  In Reed Tool Co. v.
Copelin, 689 S.W.2d 404 (Tex. 1985), the Texas Supreme Court adopted the
definition of "intent" provided in the Restatement (Second) of
Torts.  Intent means "that the actor
desires to cause consequences of his act, or that he believes that the
consequences are substantially certain to result from it." Id. at
406 (citing Restatement (Second) of
Torts ' 8A (1965)
(emphasis added)).  The court then held
"that the intentional failure to furnish a safe place to work does not
rise to the level of intentional injury except when the employer believes his
conduct is substantially certain to cause the injury."  Id. at 407.








Finally, other language in this policy
supports the trial court=s
conclusion.  The only express exclusion
of non-accidental or intentional conduct is written from the perspective of the
insured.  The intentional conduct
exclusion specifically delimits:  A>Bodily injury= or >property damage=  expected or intended from the standpoint of
the insured.@  Based on the contract definition of
"occurrence," and the contract language in the intentional exclusion
clause, we follow King and hold that the determination of whether Athe act was intentional
was to be determined from the >standpoint of
the insured.=@  King, 2002 Tex. LEXIS 141, at *18-20.  Thus, from the standpoint of the insured,
there was no intentional conduct. 
Rather, the negligent representation and its damages were an accident
and thus fall within the terms of the CGL policy.

We hold 
the trial court correctly determined there was an occurrence under this
CGL policy.  The analysis of the term Aoccurrence@ is largely
determined by whether the activity was expected or intended from the standpoint
of the insured.  Heyward, 536
S.W.2d at 557.  It is the damage, and not
the accident, which is neither expected nor intended.   Union Pac. Res. Co. v. Aetna Cas. &
Sur. Co., 894 S.W.2d 401, 404  (Tex.
App.BFort Worth
1994, writ denied).  An event is
accidental within the meaning of the policy coverage, if it is Aan effect that >cannot be
reasonably anticipated from the use of [the means that produced it], an effect
which the actor did not intend to produce and which he cannot be charged
with the design of producing, is produced by accidental means.=@ Cowan,
945 S.W.2d at 827 (emphasis added) (quoting, approving, and distinguishing Heyward).  We overrule appellants first issue.








                                        Employment-Related
Exclusion

We now address appellants=
employment-related exclusion issue.  The
policy provides in pertinent part:

1. 
The following exclusion is added to COVERAGE A (Section I):

o. 
>Bodily injury= arising out of
any:

(1) Refusal to employ;

(2) Termination of employment;

(3)
Coercion, demotion, evaluation, reassignment, discipline,        defamation, harassment, humiliation,
discrimination, or 

      other employment-related practices,
policies, acts or 

      omissions; or

(4) Consequential >bodily injury= as a result of
(1) through (3)

      above.

This exclusion applies whether the insured
may be held liable as an employer or in any other capacity and to any
obligation to share damages

with or to repay someone else who must pay
damages because of injury.

Appellants specifically center their
argument on subsection (3) Aevaluation . .
. or any other employment related practices, policies, acts or omissions.@  Appellants take the position that when
Lifecare negligently gave information to Thomas Care about its former employee,
it was providing an evaluation and the exclusion operates because the insured
may not be held liable as an employer or in any other capacity.  Appellants argue the employment related
exclusion, Aas it relates
to statements about a prior employee was thoroughly discussed in Frank &
Freedus v. Allstate Ins. Co., 45 Cal. App.4th 461 (1996).@  The California situation was dissimilar.  There, Caprow sued his former employer, Frank
and Freedus, for defamation related to his termination.  Id. at 471.  The case holds: 








The
defamation here was clearly employment‑related. The statement was made in
the context of Caprow's employment and its content is directed to Caprow's
performance during employment. Thus, the defamation falls within subdivision
(2) of the exclusion. The defamation is also encompassed within subdivision (3)
of the exclusion, i.e., a personal injury (defamation) arising out of
termination of employment; the statement was made in the context of and related
to Caprow's termination of employment.

 

Id.  Frank and Freedus sought coverage because of Aa complaint by
a former employee seeking damages for wrongful termination and defamation.@  Id. at 465.  The coverage was correctly denied because of
two clear exclusions: (1)  the
termination exclusion;  and (2) because
the alleged defamation was made in the employment context.  We particularly note the context.  The Frank and Freedus law firm was sued by
its former employee in clear distinction to our case where an employer
was sued by a unrelated third party.

Next,
appellants cite Berman v. Gen. Accident Ins. Co., 671 N.Y.S.2d 619,
622-23 (N.Y. App. Div.  1998).  This New York case, like Frank &
Freedus, was a direct action by a former partner (employee) of the firm,
arising out of fraudulent negotiations and defamation surrounding the discharge
of Dr. Attas.  Id. at 621-23.   ADr. Attas
brought a lawsuit against Dr. Berman and Park East alleging, inter alia,
that she had been defrauded in her negotiations with Dr. Berman regarding her
purchase of the clinic and defamed by Dr. Berman subsequent to her discharge.@  Id. at 621.  As noted by appellants, statements made by
Dr. Berman, mildly criticizing Dr. Attas to the staff and a patient, fell
squarely within the policy exclusion of specified employment related practices
such as evaluation and defamation.  Id.
at 623.








Appellee counters that appellants= argument is
wrong because there was no allegation of employment evaluation and the plain
language of the exclusion is inapplicable. 
Appellee is correct that the allegation against Lifecare was that it
negligently gave information.  There is
no factual allegation in the underlying pleadings, that an evaluation
was requested or given.  The allegation
was that negligent acts and omissions arose Afrom the failure of Lifecare to exercise
ordinary care in determining that the information it transmitted concerning Mr.
Willis was accurate.@  As appellee correctly argues, under the eight
corners rule, the courts look to the allegations within the pleadings in the
light of the policy provisions without reference to the truth or falsity of
such allegations.  Heyden Newport
Chem. Corp. v. S. Gen Ins. Co., 387 S.W.2d 22, 24 (Tex. 1965).  If there is any doubt as to whether the
allegations state a claim covered by the policy, such doubt is resolved in
favor of the insured.  Id. at
26.  Because appellee is right that there
is no allegation against Lifecare that it gave an employment-related
evaluation, the exclusion is not raised by the controlling factual allegations.
 See Farmers Tex. County Mut. Ins. Co.
v. Griffin, 995 S.W.2d 81, 82 (Tex. 1997) (in determining an insurer=s duty to
defend its insured, we look only to the pleadings and the insurance policy).








Appellee also argues for the application
of the doctrine of ejusdem generis.  AUnder the rule
of ejusdem generis, where specific and particular enumerations of
persons or things in a statute are followed by general words, the general words
are not to be construed in their widest meaning or extent, but are to be
treated as limited and applying only to persons or things of the same kind or
class as those expressly mentioned.@   Stanford v. Butler, 181 S.W.2d 269,
272 (Tex. 1944).  This doctrine  finds application in construing the term Aother employment
related practices.@  This clause is to be applied to persons or
things in the same kind or class as those expressly mentioned.  Id. 
Thus, other employment-related practices would likely not refer to such
things as kinder-care, health coverage, vacation time, or even
post-employment.  Rather,
employment-related practices, would first have to be plainly related to the job
(or insured) referenced in the insurance policy, and secondly, be in the class
of coercion, demotion, evaluation, reassignment, discipline, defamation, et
cetera.

Finally, appellee directs our attention to
another out-of-Texas case involving a former employee who sued his ex-employer
for defamation resulting in a coverage denial on a similarly worded
employment-related acts exclusion.  See
HS Servs. v. Nationwide Mut. Ins. Co., 109 F.3d 642, 644 (9th Cir. 1997).[12]  The Ninth Circuit succinctly differentiated
its own precedent cited by appellants, Frank & Freedus:








In the case at bench the defamation is not
"clearly employment‑related" because, although its content is
directed to Cade's employment, the statements were not made in the context of
Cade's employment.  In Frank and
Freedus the defamatory remark was directly related to employment in that it
related to the employer's attempts, as employer, to explain the termination to
its other employees; that was its context. It was "clearly" an
attempt by the employer, as employer, to bolster employee morale and, thus, was
employment‑related.

 

Here, the purpose of the remarks was to
protect Cade‑Grayson in the marketplace. The remarks related directly to
competition between Cade and Cade‑Grayson in the marketplace and the
latter's attempt to protect itself against a remark made by Cade, not as an ex‑employee,
but as a present competitor; that was their context. While it may be literally
true that the remarks "related" to Cade's employment, that
relationship was too indirect and attenuated to qualify under the exclusion. In
short, because of the difference in context, this case is not controlled by Frank
and Freedus.

 

Id. at 646. 

Considering the
exclusion in context, we first agree there was no request for an
evaluation.  Nor can we say the exclusion
argued reaches Lifecare=s
non-employment or post-employment activities as described.  The policy excluded activities that were not
alleged.  The situation is further
attenuated because the worker was gone. 
When the employment ended, the activity is less likely to be employment
related except perhaps in some defamation or termination circumstances as
illustrated by Frank & Freedus. 
See Frank & Freedus, 45 Cal.App.4th at 471.  Here there is no factual allegation of
coercion, demotion, evaluation, discrimination Aor other employment related practices,
policies, acts or omissions.@ The only
factual allegation is in the nature of a negligent representation.  It was claimed Lifecare gave the wrong
information about a former employee. 
While an evaluation may be a negligent representation, a negligent
representation is not necessarily an evaluation.













This court "must adopt the
construction of an exclusionary clause urged by the insured as long as that
construction is not itself unreasonable, even if the construction urged by the
insurer appears to be more reasonable or a more accurate reflection of the
parties' intent."  Barnett v.
Aetna Life Ins. Co., 723 S.W.2d 663, 666 (Tex. 1987).  Further, in considering the allegations in
the plaintiff=s petition to
determine whether they fall within the coverage, a liberal interpretation of
the meaning of those allegations should be indulged.  Heyden, 387 S.W.2d at 26;  Norvell Wilder Supply Co.  v. Employers Cas. Co., 640 S.W.2d 338,
340 (Tex. App.BBeaumont 1982,
writ dism=d w.o.j.).  Even where the injured person's petition does
not state facts sufficient to clearly bring the case within or without the
coverage, the insurer is obligated to defend if there is potentially a case
under the complaint within the coverage of the policy.  St. Paul Ins. Co. v. Rahn, 641 S.W.2d 276,
279 (Tex. App.BCorpus Christi
1982, no writ); Fort Worth Lloyds v. Garza, 527 S.W.2d 195, 199 (Tex.
Civ. App.BCorpus Christi
1975, writ ref'd n.r.e.).  Any doubts in
that regard will be resolved in the insured's favor.  Heyden, 387 S.W.2d at 26.  The factual allegations within a petition are
broadly construed when determining if a petition alleges facts that potentially
state a claim within the coverage of a policy.  Nat=l Union Fire Ins. Co. of Pittsburgh v.
Merchants Fast Motor Lines, Inc., 939 S.W.2d 139, 141 (Tex. 1997); Bradleys'
Elec., Inc., 33 S.W.3d at 104.  Thus,
we hold, appellants have not demonstrated, that either the specific insurance
contract language they rely on, or their summary judgment proof, entitle
them  to the application of this
employment related exclusion. We overrule appellants= second
issue.  

The judgment of the trial court is
affirmed.

 

DON WITTIG

Retired Justice

 

 

Publish.

Tex. R. App. P. 47.3(b).

 

Opinion
delivered and filed

this 24th day of October, 2002.











[1]
Retired Justice Don Wittig assigned to this Court by the Chief Justice of the
Supreme Court of Texas pursuant to Tex.
Gov=t Code Ann. '
74.003 (Vernon 1998). 





[2]  Found in Plaintiff=s
Second Amended Original Petition.





[3]  Appellee argues in the alternative for
coverage under coverage B, advertising injury. 
Although we do not reach the second part of appellants=
first issue, we agree with appellants that 
this coverage is clearly not applicable.





[4]
The importance of this language is discussed in King v. Dallas Fire Ins. Co.,
45 S.Ct. J. 1224, 2002 Tex. LEXIS 141, at *6-10 (August 29, 2002).





[5]  We observe the insurer may have had any
number of legitimate liability defenses it could have raised on behalf of its
insuredBhad it only
defended Lifecare.  The issues here are
contract, not potential tort defenses.





[6]  Bailey relies on Cowan for its
definition of occurrence/accident.  Am.
States Ins. Co. v. Bailey, 133 F.3d. 363, 372 (5th Cir. 1998).





[7]  To the extent Folsom relies on Bailey,
its authority seems to be seriously undermined, except, perhaps, to derivative
claims under respondeat superior.  See
infra note 8.





[8]  In King, the supreme court did not
expressly address the duty to defend Aon
only the vicarious liability claim.@  King, 2002 Tex. LEXIS 141, at *2.  However, we believe King clearly
disapproves any disavowal of coverage for the independent negligence of the
employer or any employee.  Id. at
*7-8.





[9]  We assume appellants mean there would be no
coverage.  The issue is contract
coverage, not whether or not there was liability under the coverage.  Not only do appellants mistakenly argue Ano
liability,@ they also
incorrectly argue for the application of the Abut
for@ tort causation
rule--rather than the application of contract construction rules.





[10]  Nor is it disputed Lifecare paid appellants a
premium of over $51,000.00.





[11]  These construction rules favoring the insured
are applicable when there is an ambiguity in the policy; if the exclusions in
question are susceptible to only one reasonable interpretation, then these rules
do not apply. Nat=l
Union Fire Ins. Co. v. Hudson Energy Co., 811 S.W.2d
552, 555 (Tex. 1991).





[12]
The policy's "Employment-Related Practices Exclusion" provided that
coverage does not apply to:

c.
"Personal injury" arising out of any:

(1)
Refusal to employ; (2) Termination of employment; (3) Coercion, demotion,
evaluation, reassignment, discipline, defamation, harassment, humiliation,
discrimination, or other employment-related practices, policies, acts or
omissions; or (4) Consequential "personal injury" as a result of (1)
through (3) above.