OPINION OF THE COURT
Franklin R. Weissberg, J.
This is an action seeking a declaration that, pursuant to the plaintiffs’ insurance policy with the defendant, the plaintiffs are entitled to reimbursement for compensatory damages which they agreed to pay in the settlement of a previous action, along with all attorney’s fees, costs and disbursements incurred in that action. Both sides have moved for summary judgment.
Previous Action between Plaintiffs and Dr. Amy I. Attas
Dr. Lewis H. Berman is a veterinarian who owns the Park East Animal Hospital, Inc., in Manhattan. He employed a veterinarian named Amy I. Attas from August 1988 until August 1992, at which time she was discharged. Thereafter, by complaint verified on December 17, 1992, Dr. Attas brought a lawsuit against Dr. Berman and Park East alleging, inter alia, that she had been defrauded in her negotiations with Dr. Berman regarding her purchase of the clinic and defamed by Dr. Berman subsequent to her discharge.
As to the allegations of fraud, Dr. Attas claimed that Dr. Berman had induced her to remain with the clinic and forego a salary increase by representing that the practice was essentially unprofitable and that she would be given a right of first refiisal for the sale of the clinic.
As to her alleged defamation, Dr. Attas pointed to three instances of libel. First, the day after her termination, Dr. Berman held a staff meeting at which he informed various clinic employees of Dr. Attas’s departure and explained that while she was a good doctor, he nevertheless believed that her personal life had interfered with her performance to an unacceptable extent. Second, within a short time after Dr. Attas’s *15 termination, the clinic received between 40 and 50 requests from clients asking that their pets’ medical records be forwarded to Dr. Attas at her new practice. In response, Dr. Berman wrote a form letter to each of these clients in which he stated that he was well aware of Dr. Attas’s capabilities as a veterinarian but that they had had a number of differences of opinion which made it impossible for him to continue her as an employee. Noting that Dr. Attas had been replaced by a well-trained and experienced veterinarian, he expressed the hope that the client would continue to use the clinic’s services as well as the services of Dr. Attas. Third, within a few months of Dr. Attas’s departure, Dr. Berman had spoken to at least three clients about the matter, explaining to them that Dr. Attas was not as dedicated a doctor as he had initially believed her to be.
In November 1994, the case was tried before a jury which returned a verdict awarding Dr. Attas a total of $426,000 in compensatory and punitive damages. As to the compensatory damages, the jury awarded Dr. Attas $15,000 on her claim that she had been defrauded into remaining with the clinic. As to her defamation claims, the jury awarded Dr. Attas $110,000 for the statements which Dr. Berman made about her at the staff meeting, $50,000 for the form letter which Dr. Berman sent to various clients and $1,000 for Dr. Berman’s statements about Dr. Attas which he made in person to a client. The jury also awarded Dr. Attas $250,000 in punitive damages. In a posttrial order entered June 5, 1995, the court (Diane Lebedeff, J.) reduced the punitive damages award to $15,000.
On appeal, the Appellate Division, First Department (235 AD2d 246), substantially modified the judgment against Dr. Berman. It reversed the $15,000 award for fraudulent misrepresentation as well as the $50,000 award for the form letter sent to those clients who sought to have their pets’ medical files transferred to Dr. Attas’s new practice. As to the $110,000 awarded to Dr. Attas for statements which Dr. Berman made about her at a staff meeting, the Court remanded the matter for a new trial unless Dr. Attas would stipulate to the entry of an amended judgment reducing her award on this issue to $60,000. The Court affirmed the $1,000 award for comments about Dr. Attas which Dr. Berman made to a client and the $15,000 award for punitive damages.
Thereafter, Dr. Berman and Dr. Attas settled the case for $79,999, pursuant to a settlement agreement dated June 9, 1997. The agreement specifically stated that this amount *16 represented full settlement of all claims asserted by Dr. Attas for compensatory damages.
The Defendant’s Representation of the Plaintiffs in the Attas Action Pursuant to Their General Liability Insurance Policy
In April 1991, the plaintiffs took out a business owner’s general liability insurance policy with the defendant General Accident Insurance Company of America (General Accident). The policy insured plaintiffs against, inter alia, liability for “personal injury” caused by an offense arising out of their business and “advertising injury” caused by an offense committed in the course of advertising the business’s goods, products or services. Under the policy, both “personal injury” and “advertising injury” include an injury arising out of “oral or written publication or material that slanders or libels a person or organization or disparages a person’s or organization’s goods, products or services.” The policy expressly excludes coverage for “personal injury” arising out of the termination of employment or the “coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or other employment-related practices, policies, acts or omissions.” The policy also excludes coverage for personal injury or advertising injury arising out of oral or written publication of material if done with knowledge of its falsity. The policy provides that General Accident has a right and duty to defend the plaintiffs in any lawsuit seeking damages arising out of an injury which is covered under the insurance contract.
Upon service of Dr. Attas’s complaint, Dr. Berman notified General Accident about the matter. General Accident informed him that it would defend the case. However, the company expressly reserved its rights not to do so because it believed that the allegations contained in the complaint might not be covered by the policy. In reserving its rights, General Accident referred Dr. Berman to the exclusions under the policy for personal injury arising out of employment-related practices or acts. Noting that Dr. Attas was also seeking punitive damages, the company advised Dr. Berman that insurance coverage for punitive damages is against public policy in New York and is not covered under the terms and conditions of the policy.
Notwithstanding its reservations, General Accident defended the plaintiffs up to and including the jury verdict. Thereafter, by letter dated December 21, 1994, General Accident notified Dr. Berman that it had determined that there was no insurance coverage for the causes of action under which plaintiffs *17 were held liable in the litigation brought by Dr. Attas. The company pointed to the exclusion under the policy for personal injury arising out of “employment-related practices”. General Accident advised Dr. Berman that if he should choose to bring an appeal from the jury’s verdict, he would have to retain and pay for his own counsel since the company would no longer pay for any further defense costs or expenses. Thereafter, the plaintiffs did in fact retain and pay their own counsel to represent them in the prosecution of the appeal and the ultimate settlement of the case. The plaintiffs paid for all legal costs and expenses incurred therein. This action for indemnification then followed.
Discussion
1. Indemnification for the $79,999 Settlement Agreement
As a result of the Appellate Division’s ruling, the only compensatory damages to which Dr. Attas was entitled was for the comments which Dr. Berman made about her to a client and for defamatory statements made at the staff meeting the day after Dr. Attas was discharged. In thereafter settling the case for $79,999, the parties specified that this stun represents full settlement of all claims asserted by Dr. Attas for compensatory damages.
In order to be entitled to indemnification for any portion of the settlement agreement, plaintiffs must establish that the defamatory statements made at the staff meeting or to their client is an injury which is covered under the policy. In support of their insurance claim, plaintiffs cite to the provision which covers damages resulting from a personal injury arising out of an oral disparagement of a person’s services.
Coverage under this provision is, however, subject to exclusion if the alleged injury arises from any evaluation, defamation, humiliation or “other employment-related practices”. The plaintiffs assert that neither of the two defamatory statements which were the subject of the settlement agreement falls within this exclusion. According to the plaintiffs, these statements were not “employment-related” because they were made after Dr. Attas had been discharged and no longer employed by the defendants. They also argue that the statements did not reflect a genuine assessment of an employee but, rather, an attempt to disparage a businessperson who had unsuccessfully negotiated with plaintiffs to purchase the practice and who had also become a new competitor (Dr. Attas allegedly opened a new *18 practice the day after she was terminated). These arguments are without merit.
Irrespective of Dr. Berman’s motive for mildly criticizing Dr. Attas in statements he made to the staff and to a patient, those statements constituted an assessment of Dr. Attas’s performance as an employee of the clinic and an explanation of why she was discharged. As such, these statements fall squarely within the policy exclusion for specified employment-related practices such as evaluation and defamation. (See, Frank & Freedus v Allstate Ins. Co., 45 Cal App 4th 461, 471-472, 52 Cal Rptr 2d 678, 683-684 [1996] [finding that an identical “employment-related practices” exclusion supported insurer’s refusal to indemnify].) Even though the statements were made after Dr. Attas was discharged, they were nevertheless clearly “employment-related”. The plaintiffs’ argument that the exclusionary language in the policy must be read as limited to injuries sustained while the employee is still employed is “semantically unreasonable and unacceptable.” (Loyola Marymount Univ. v Hartford Acc. & Indem. Co., 219 Cal App 3d 1217, 1223, 271 Cal Rptr 528, 531 [1990].) Accordingly, the defendants are entitled to a declaration that they are not required under the policy to indemnify the plaintiffs for the $79,999 in compensatory damages which was the subject of their settlement agreement with Dr. Attas.
2. Indemnification for the Expenses Incurred in the Plaintiffs’ Postverdict Defense and Prosecution of an Appeal
Where an insurance policy includes the insurer’s promise to defend the insured against specified claims as well as to indemnify for actual liability, the insurer’s duty to furnish a defense is broader than its obligation to indemnify. The duty of the insurer to defend the insured rests solely on the question of whether the complaint alleges any facts or grounds which bring the action within the protection purchased. (See, Seaboard Sur. Co. v Gillette Co., 64 NY2d 304, 310 [1984].)
Here, if any of the issues raised in the plaintiffs’ postverdict defense and appeal in the Attas action related to an alleged injury coverable under their insurance policy with General Accident, the company was required to provide representation for the plaintiffs or, alternatively, pay for the expenses incurred in the course of the litigation. In its verdict, the jury found that in addition to his liability for statements which he made about Dr. Attas at a staff meeting and in a conversation with a patient, Dr. Berman was also liable for statements which he *19 made about her in a form letter which he sent to more than 40 clients who had requested that their pets’ medical records be sent to Dr. Attas at her new practice.
Under the parties’ insurance policy, General Accident is required to defend the plaintiffs in any lawsuit seeking damages arising out of an “advertising injury” caused by an act “committed in the course of advertising your goods, products or services.” The policy covers statements which “disparage[ ] a person’s or organization’s goods, products or services.” Unlike “personal injury” claims, the policy does not exclude an advertising injury which may be related to an employment practice.
The policy does not define what constitutes “advertising”. Since this term is used within the context of the insuring provisions and not within an exclusion, it should be broadly interpreted, with any doubts as to coverage resolved in favor of the insured. (See, American States Ins. Co. v Canyon Creek, 786 F Supp 821, 828 [ND Cal 1991].) In Black’s Law Dictionary, the definition of “advertising” includes any written statement contained in a letter “made by the seller in any manner in connection with the solicitation of business”. (Black’s Law Dictionary 50 [5th ed 1979].) To advertise is “[t]o advise, announce, apprise, commend, give notice of, inform, make known, publish [or c]all to the public attention”. (Ibid.)
Applying this definition, there can be no doubt that, in sending the form letter in question to many of his clients, Dr. Berman was engaged in advertising activity. In addition to explaining the reason for Dr. Attas’s discharge, the letter was clearly intended to persuade Dr. Berman’s clients that they should continue to use the clinic’s medical services. In the letter, Dr. Berman noted that the clinic had recently hired “a well-trained and experienced veterinarian,” promised that the clinic would “continue the same quality of care and the personal attention for which we are known,” pointed out that the clinic staff was “available on a 24 hour basis” and expressed his hope that the client would “continue to use our services” as well as the services of Dr. Attas. Thus, Dr. Berman was soliciting the continuation of business and doing so by calling attention to the quality of care and services available at the clinic.
Under the policy, coverage of claims arising out of an “advertising injury” is excluded if the defamatory statements were made with knowledge of their falsity. This exclusion does not apply to the facts in this case. As the plaintiffs point out, the jury was not required to find, and did not specifically find, *20 that the statement which Dr. Berman made about Dr. Attas in the form letter was made with knowledge of its falsity. In any event, the Appellate Division found that the letter was not even actionable. Indeed, the letter merely states that Dr. Berman could not continue employing Dr. Attas because they had had “an increasing number of differences of opinion.” Such a statement is hardly susceptible to a serious allegation that it was made with knowledge of its falsity.
Accordingly, the plaintiffs’ motion for summary judgment is granted to the extent that they seek indemnification for the postverdict expenses which they incurred in the Attas litigation. The defendant’s cross motion for summary judgment is granted to the extent that it seeks a declaration that it is not required to indemnify the plaintiffs for the compensatory damages which plaintiffs agreed to pay in their settlement agreement with Dr. Attas.
The plaintiffs shall provide to the court, within 10 days of notice of entry of this order, an itemization of the total unreimbursed expenses which they incurred in the Attas litigation. The defendants shall thereafter have 10 days to respond.